**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert D. Maguire,<br><br>      Plaintiff,<br><br>v.<br><br>Cathleen A. Coltrell, et al.,<br><br>      Defendants. | No. CV-14-01255-PHX-DGC<br><br>**ORDER** |

Plaintiff Robert Maguire has claimed that his former partner, Defendant Cathleen Coltrell, breached an agreement to rent and sell two homes for their mutual benefit. Defendant Coltrell now seeks summary judgment on Plaintiff's claims. Doc. 51. Defendant John Carmichael, who is Coltrell's husband, separately seeks summary judgment on his claim that the Court lacks jurisdiction over him. Doc. 49. The Court will deny Coltrell's motion and grant Carmichael's.[1]

**I. Background.**

In 2005, Robert Maguire and Cathleen Coltrell began a romantic relationship, and Maguire soon moved into Coltrell's home on Justine Road ("the Justine home").

---

[1] The request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

Docs. 52-1 at 7; 55 at 3.[2]  While living there, Maguire contributed $1,500 a month to help pay down the mortgage for the Justine home and cover common expenses.  Doc. 58-2 at 6-10.  Maguire claims to have paid $75,530 to Coltrell over the forty-four months they lived together in the Justine home.  Doc. 58-1 at 2.  Planning to eventually marry, Maguire and Coltrell signed a prenuptial agreement in February of 2008.  Doc. 52-5.  Under this agreement, the Justine home was to remain the separate property of Coltrell.  *Id.* at 8.  The couple eventually decided not to marry.

In 2009, Maguire claims that he and Coltrell entered into a business partnership or a joint venture.  Doc. 52-1 at 10.  The impetus for this partnership was the planned purchase of a new home on Milton Lane ("the Milton home").  The understanding was that Maguire would pay $104,000 of the $160,000 downpayment on the Milton home, while Coltrell would keep the Justine home and rent it out for income.  Doc. 58-1 at 2-3.  Maguire claims that "Coltrell agreed that the Justine House and the Milton House would be held by her for our mutual benefit as an income producing property and as an asset for our retirement to be sold at a later time in a much better real estate market."  *Id.*  Coltrell disputes the existence of a partnership or joint venture.

The couple moved into the Milton home in 2009.  Doc. 58 at 4.  Although Maguire claims that the parties initially planned to jointly own the home (Doc. 55 at 5-6), the mortgage for and title to the Milton home were put in Coltrell's name (Doc. 58 at 5).  Coltrell then rented out the Justine home.  Doc. 58 at 4-5.  Maguire and Coltrell lived together at the Milton home until Coltrell ended their relationship in February of 2013.  Doc. 55 at 7.  Coltrell left Maguire for Defendant John Carmichael, whom she married in Colorado in April of 2013.  *Id.* at 8.

After their breakup, Maguire and Coltrell tried to wind up their financial affairs.  In March of 2013, Maguire sent an e-mail in response to an offer from Coltrell: "I will accept the $25k check from you for my contributions into Milton even though I feel that I

---

[2] Cathleen Coltrell's surname is now Carmichael.  To avoid confusion with Defendant John Carmichael, the Court will refer to her as Cathleen Coltrell.

am coming up way short if you consider what I did for you over the course of our relationship. I don't want anything for that." Doc. 52-3 at 1. Coltrell wrote several checks to Maguire. Docs. 58 at 8-9, 52-4 at 1-5. These checks were insufficient for Maguire, and he sent an e-mail demanding further payments. Doc. 52-7 at 1. Coltrell eventually sold the Justine and Milton homes, and she moved to Colorado to be with Carmichael. Doc. 55 at 7-8.

Maguire filed suit against Coltrell and Carmichael on May 7, 2014. Doc. 1-1 at 5. Maguire brings claims for breach of contract, conversion, accounting, breach of fiduciary duty, and unjust enrichment. Doc. 33. The lawsuit is primarily based on the alleged partnership or joint venture, which Maguire describes as "a business relationship based upon (1) the acquisition of a real property at a price which would allow a future sale at a substantial profit and (2) the maintaining of the ownership of the Justine House as a rental property to generate cash flow." Doc. 55-1 at 1. In essence, Maguire seeks what he believes to be his rightful share from the sale of the Justine and Milton homes. Coltrell and Carmichael have brought numerous counterclaims. Doc. 38; *see also* Doc. 48 (dismissing counterclaim for civil extortion).

Carmichael argues that this Court lacks jurisdiction over him. Doc. 49. Coltrell seeks summary judgment on all of Maguire's claims. Doc. 51.

**II.   Summary Judgment.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

trial." *Celotex*, 477 U.S. at 322.  Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III.  Personal Jurisdiction over Defendant Carmichael.**

**A.  Legal Standard.**

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014).  Arizona has authorized its courts to exercise jurisdiction over persons to the maximum extent permitted by the Due Process Clause of the Constitution.  *See* Ariz. R. Civ. P. 4.2(a). Under the Due Process Clause, a federal district court may exercise jurisdiction over a person who does not reside in the forum state if that person has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted); *see also Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014).  The plaintiff bears the burden of establishing personal jurisdiction over each defendant.  *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir. 1986) (citing *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.2 (9th Cir. 1977)).

**B.  Analysis.**

John Carmichael has not and does not live in Arizona, own property in Arizona, conduct business in Arizona, or regularly visit Arizona.  Doc. 55 at 1-3.  Maguire does not dispute these facts.  *Id.*  Nor does Maguire argue that Carmichael was involved in Coltrell's unlawful actions.  Doc. 54.  The necessary minimum contacts between Carmichael and Arizona appear not to exist.  Maguire, however, argues that the Court may exercise jurisdiction over Carmichael due to his marriage with Coltrell.

Relying on *Rollins v. Vidmar*, 711 P.2d 633 (Ariz. Ct. App. 1985), Maguire argues that the Court has jurisdiction over Carmichael because Coltrell acted for the benefit of

- 4 -

their marital community and because Maguire may eventually be able to execute a judgment on their marital property. In *Rollins*, a daughter living in California asked her mother, who lived in Arizona, for a loan to help her and her husband purchase a home in California. *Id.* at 634. When the loan was not repaid, the mother sued the couple in an Arizona court. *Id.* The husband contested the court's jurisdiction over him. The court framed the jurisdictional question as "'whether the [marital] *community* had sufficient contact'" with Arizona. *Id.* at 635 (quoting *Barer v. Goldberg*, 582 P.2d 868, 872 (Wash. Ct. App. 1978) (emphasis in original)). Although not clearly stated, the court appeared to find that the marital community had sufficient contact with Arizona because the debt incurred by the daughter was a "community obligation" under California law and was for the benefit of the marital community. *Id.* at 635-36.

*Rollins* does not control the outcome of this case. As noted by a later case, a key factor in *Rollins* was that the couple receiving the loan lived in a community property state. *See Sigmund v. Rea*, 248 P.3d 703, 705 (Ariz. Ct. App. 2011). Carmichael and Coltrell married and reside in Colorado, which is not a community property state. *See In re Marriage of Gallo*, 752 P.2d 47, 52 n.5 (Colo. 1988). Also, the facts in *Rollins*, involving a couple who received and partially repaid a loan while married, are distinguishable. Unlike *Rollins*, the present case involves neither a spouse who acted unlawfully during marriage nor a contractual debt. Rather, it involves Coltrell allegedly entering and then breaching a partnership or joint-venture agreement primarily before she married Carmichael. Although Carmichael may have benefited from Coltrell's conduct, his connection with Arizona is far weaker than the husband's connection in *Rollins*.

Other cases have discussed when a person's marriage is a sufficient basis for the exercise of jurisdiction. In *Sigmund*, the court discussed *Rollins* and framed the jurisdictional question as whether, under the local law that governed the marriage, the spouses "or any entity similar to a marital community could be held liable for [one spouse's] conduct." 248 P.3d at 706. The court noted that "concepts of agency might justify the exercise of jurisdiction in appropriate cases." *Id.* at 707. Other courts have

also framed the issue as one of agency, noting that "[w]here a party seeks to join a spouse based on membership in the marital community, the court must consider the issue of agency in light of the legal status given to the community itself under the applicable community property laws." *Essex Eng'g Co. v. Credit Vending, Inc.*, 732 F. Supp. 311, 315 (D. Conn. 1990).

The Court finds that Carmichael's potential liability based on his sharing of marital property with Coltrell is an insufficient basis for personal jurisdiction. *See Gen Ads, LLC v. Breitbart*, 435 F. Supp. 2d 1116, 1124 (W.D. Wash. 2006) (reaching same conclusion). The Court disagrees with the above cases to the extent they suggest otherwise. In different contexts, courts have consistently warned against confusing the standards for imposing liability and for exercising personal jurisdiction. *See Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996) ("[L]iability is not to be conflated with amenability to suit in a particular forum."); *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990) ("Liability and jurisdiction are independent."). "Liability depends on the relationship between the plaintiff and the defendants and between the individual defendants; jurisdiction depends only upon each defendant's relationship with the forum." *Sher*, 911 F.2d at 1365. A spouse's potential liability may be relevant to the personal-jurisdiction analysis where, as in Arizona, both spouses must be named in a civil action in order for the plaintiff to execute a judgment on their community property. *See* A.R.S. § 25-215(D). But Coltrell and Carmichael were married and live in Colorado, and Plaintiff has not cited, nor is the Court aware, of such a law in Colorado. It is therefore unnecessary to consider whether Carmichael, under Colorado law, would be liable if Plaintiff were successful in his action against Coltrell.[3]

The Court also sees no basis for finding that Coltrell was acting as Carmichael's agent. As already noted, much of the conduct that Plaintiff complains of occurred before Coltrell and Carmichael's marriage. Furthermore, Plaintiff has neither alleged nor

---

[3] For this reason, the Court will not address Maguire's somewhat attenuated argument regarding *Shearton Serv. Corp. v. Johnson*, 5 P.3d 395 (Colo. App. 2000), which discusses the seniority of liens on marital property.

- 6 -

produced evidence of a "fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) Of Agency § 1.01. Marriage alone does not create an agency relationship between the married couple. *Gen Ads, LLC*, 435 F. Supp. 2d at 1124 (citing Restatement (Second) of Agency § 22 cmt. b). Nor does the mere fact that Coltrell may have acted for the benefit of Carmichael and their marital community give the Court jurisdiction over Carmichael. Were the rule otherwise, a spouse would always be a potential defendant for the other spouse's unlawful conduct, and would be unable to reasonably anticipate to which courts he might be haled. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

There being no contacts between Carmichael and Arizona, Carmichael's motion for summary judgment for lack of personal jurisdiction will be granted.

**III.    Defendant Coltrell's Motion for Summary Judgment.**

Coltrell seeks summary judgment on Maguire's claims for breach of contract, conversion, accounting, breach of fiduciary duty, and unjust enrichment. Maguire has agreed to dismiss his claim for conversion. Doc. 57 at 11.

**A.    Partnership Claims.**

Maguire's claims for breach of contract, an accounting, and breach of fiduciary duty are premised on the existence of a partnership or joint-venture agreement between Maguire and Coltrell. In seeking summary judgment on these claims, Coltrell does not focus on the specific elements of each claim. For that reason, the Court will address the claims together as the "partnership claims." Coltrell argues that the partnership claims are barred because (1) a partnership or joint venture did not exist, (2) the statute of frauds bars the claims, (3) Maguire agreed to settle, and (4) the claims are time-barred.

**1.    Existence of Partnership or Joint Venture.**

Under Arizona law, "the association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to

form a partnership." A.R.S. § 29-1012(A). In the absence of a written agreement, the question of whether a partnership exists is one of fact. *Bohmfalk v. Vaughan*, 357 P.2d 617, 621 (Ariz. 1960). "The essential elements of a partnership may be established by demonstrating the existence of an agreement between the putative partners to work together to acquire property for their joint benefit and to divide all the profits made therefrom equally." *Jolly v. Kent Realty, Inc.*, 729 P.2d 310, 317 n.4 (Ariz. Ct. App. 1986) (citing *Fernandez v. Garza*, 354 P.2d 260 (Ariz. 1960)). "A joint venture differs from a partnership principally because it is usually limited to a single transaction. A joint venture requires an agreement, a common purpose, a community of interest, and an equal right of control." *Id.* (citations omitted). An unmarried, cohabitating couple may form a partnership or joint venture. *Cook v. Cook*, 691 P.2d 664, 667 (Ariz. 1984); *Fernandez*, 354 P.2d at 263.

If a jury were to believe Maguire's testimony, they could find that Maguire and Coltrell formed a partnership or joint venture. Maguire has stated that he and Coltrell began their business relationship in 2009. Doc. 52-1 at 10. He claims that "Coltrell agreed that the Justine House and the Milton House would be held by her for our mutual benefit as an income producing property and as an asset for our retirement to be sold at a later time in a much better real estate market." Doc. 58-1 at 2-3. In addition, Maguire claims that he paid $104,000 of the $160,000 downpayment on the Milton home, as well as tens of thousands of dollars to help pay down the mortgage for the Justine home. *Id.* If believed by the jury, this testimony shows that Maguire and Coltrell agreed to "work together to acquire property for their joint benefit and to divide all the profits made therefrom equally," *Jolly*, 729 P.2d at 317 n.4, thereby establishing a partnership or joint venture.

Although the Justine and Milton homes were titled in Coltrell's name, this fact alone does not prohibit a finding that Maguire and Coltrell associated as co-owners to acquire and manage the homes for a profit. *See, e.g.*, *Bass v. Bass*, 814 S.W.2d 38, 43-44 (Tenn. 1991) (finding female cohabitant had partnership interest in a business and bank

- 8 -

account, even though these were in the male cohabitant's name); *Fernandez*, 354 P.2d at 263-64 (finding female cohabitant had partnership interest in profits from rental properties held in male cohabitant's bank account). Nor does the lack of partnership tax returns, bank accounts, or credit cards disprove the existence of a partnership, as Coltrell argues. While these items are relevant evidence, a jury must consider all of the facts and circumstances in deciding the question of partnership formation. *Myrland v. Myrland*, 508 P.2d 757, 761 (Ariz. Ct. App. 1973). Furthermore, "[l]ack of partnership documentation is not the critical factor as a partnership may be formed by an oral agreement." *Id.*

Coltrell argues that "[m]ere shared ownership in property or profits from the property does not create a partnership." *Holeman v. Neils*, 803 F. Supp. 237, 241 (D. Ariz. 1992); *see also* A.R.S. § 29-1012(C)(1) (stating that joint or part ownership of real property "does not by itself establish a partnership"). But again, Maguire's evidence for a partnership or joint venture is not solely his interest in the Justine and Milton homes. He asserts an agreement to hold these properties as assets and to rent out the Justine home for income. Maguire's evidence of partnership formation creates a question of fact that must be resolved by a jury.

### 2. Statute of Frauds.

Coltrell argues that the statute of frauds, which requires "an agreement which is not to be performed within one year from the making" to be in writing, bars Maguire's partnership claims. A.R.S. § 44-101(5). "[T]he words 'not to be performed within one year' mean 'impossible to be performed within one year.'" *Co-Op Dairy, Inc. v. Dean*, 435 P.2d 470, 472 (Ariz. 1967). When the oral agreement takes longer than a year to complete, the statute of frauds does not apply if the agreement could have been performed within one year. *Healey v. Coury*, 783 P.2d 795, 799 (Ariz. Ct. App. 1989).

In a deposition, Maguire affirmed that the agreement could not possibly be completed in less than a year. Doc. 52-1 at 34-35. He also stated that he and Coltrell "assumed" that the partnership or joint-venture agreement "would last until one of us

1  died." *Id.* at 34. If the understanding was that the agreement would continue until the
2  death of one of the partners, then the agreement is not barred by the statute of frauds.
3  Either Maguire or Coltrell could have died within one year of the agreement. *See, e.g.*,
4  *Waugh v. Lennard*, 211 P.2d 806, 813-14 (Ariz. 1949) (finding that the statute did not
5  apply "for the reason that death of the promisor might have occurred within one year
6  from the date of making of the oral contract"). Although Maguire stated the agreement
7  couldn't be performed within a year, his underlying assumption – that the agreement
8  would last until one partner died – shows that the statute of frauds does not apply.

### 3. Settlement Agreement.

10  Coltrell argues that she and Maguire have settled whatever claims Maguire might
11 have against her. She points to several pieces of evidence. First, Maguire wrote in an e-
12 mail: "I will accept the $25k check from you for my contributions into Milton even
13 though I feel that I am coming up way short if you consider what I did for you over the
14 course of our relationship. I don't want anything for that." Doc. 52-3 at 1. Second,
15 Coltrell paid several sums to Maguire after their breakup, including "$74,000 of
16 [Maguire's] delinquent IRS debt and $37,000 in cash to [Maguire]." Doc. 52, ¶ 25.
17 Third, Maguire wrote on a spreadsheet analysis of the couple's finances: "When
18 [Coltrell] sells the house will be in the $800k to $1M+ range, which she keeps."
19 Doc. 52-6. Fourth, Maguire wrote in an e-mail: "Coltrell had agreed to pay me an
20 amount that was based on facts from a spreadsheet analysis that we did together of
21 monies that are owed to me based on what I had put into [the Milton home]." Doc. 52-7.
22 And fifth, Maguire stated in a deposition that Coltrell "was going to buy me out."
23 Doc. 52-1 at 21.

24  Maguire argues that there was not an agreement to settle his claims, or that
25 Coltrell breached the agreement to the extent it existed. Doc. 58 at 8-10.

26  Coltrell has not established the existence or terms of a settlement agreement as a
27 matter of undisputed fact. The evidence shows that the parties attempted to settle their
28 financial situation. And Maguire's statement that he would accept $25,000 for his

contributions to the Milton home strongly suggests a complete settlement of his claims regarding that home. But ultimately, the evidence does not show the final terms of their alleged agreement. For example, the Court cannot determine how much in total Coltrell was to pay and whether that amount was to cover Maguire's contributions for one or both of the two homes. Also, the $25,000 payment could arguably be construed either as a complete or partial settlement of Maguire's claims.

Under Arizona law, the interpretation of a contract such as this settlement agreement is "a question of law for the court when its terms are unambiguous on its face[.]" *Ash v. Egar*, 541 P.2d 398, 401 (Ariz. Ct. App. 1975). But if "there are ambiguities and it is necessary to consider the circumstances in determining its meaning, it is a question for the trier of fact to determine what those circumstances were." *Id.* The Court finds that there remain questions of fact regarding the circumstances and intent of the alleged settlement agreement. For similar reasons, the Court rejects Coltrell's arguments that that Maguire's claims are also barred under the doctrines of promissory estoppel and ratification. Based on the submitted evidence, the Court cannot determine what precisely Maguire promised or ratified.[4]

### 4. Statute of Limitations.

Coltrell argues that Maguire's partnership claims are barred by the statute of limitations. Ordinarily, a cause of action accrues, and the statute of limitations commences, when "the plaintiff knows or with reasonable diligence should know the facts underlying the cause." *Doe v. Roe*, 955 P.2d 951, 960 (Ariz. 1998). The statute of limitations for Maguire's three partnership claims – breach of contract, an accounting, and breach of fiduciary duty – are governed by a three-year limitations period. A.R.S. § 12-543. Maguire could not have known nor should he have known of the facts

---

[4] Maguire has claimed mental incapacity as an affirmative defense to Coltrell's counterclaims of breach of settlement agreement and contract. Doc. 43, ¶ 2. In her motion for summary judgment, Coltrell argues that Maguire was mentally capable of entering a settlement agreement. The Court finds it unnecessary to address this argument. First, Coltrell has not sought summary judgment on her counterclaims to which Maguire's claim of incapacity is an affirmative defense. Second, there remain issues of material fact as to whether a settlement agreement even existed.

- 11 -

underlying his partnership claims until at least February of 2013, when Coltrell informed him that she was leaving him. Doc. 55 at 7. This being less than three years before Maguire filed his complaint (Doc. 1-1 at 5), the statute of limitations does not bar his claims.

### 5. Conclusion.

In her reply, Coltrell expresses policy concerns about the possibility of a partnership agreement existing between her and Maguire. She argues that almost every cohabitating couple would be in a business partnership if the Court were to find that she and Maguire were in one. The Court disagrees. The formerly romantic relationship of the parties is largely irrelevant to the question of partnership formation. The question of partnership simply depends on whether Maguire and Coltrell agreed to manage, rent, and sell as co-owners the Justine and Milton homes. If a jury concludes that they did, then Maguire may be entitled to just compensation. The Court therefore denies summary judgment on Maguire's partnership claims.

### B. Unjust Enrichment.

Coltrell argues that the statute of frauds bars Maguire's claim of unjust enrichment. Coltrell relies on a provision of the statute of frauds stating: "No action shall be brought . . . [u]pon an agreement for . . . the sale of real property or an interest therein" unless the agreement is in writing. A.R.S. § 44-101(6). This provision does not apply to Maguire's claim. The agreement on which Maguire bases his claim for unjust enrichment is not an agreement for "the sale of real property or an interest therein." Rather, Maguire bases his claim on an agreement to share the profits from their use of partnership assets, namely, the Justine and Milton homes. Thus, because Maguire is not contesting the agreement by which Coltrell sold the Milton or Justine homes to third-parties, the statute of frauds does not apply to his claim of unjust enrichment.

Coltrell also argues that the parties' settlement agreement shows that she was not unjustly enriched and estops Maguire from arguing otherwise. The Court disagrees for the reasons mentioned above in discussing the settlement agreement. If Coltrell sold a

partnership asset and failed to share profits, and a settlement agreement does not otherwise bar his claim, Maguire can successfully bring suit for unjust enrichment. *See Loiselle v. Cosas Management Group, LLC*, 228 P.3d 943, 946 (Ariz. Ct. App. 2010) (listing elements of unjust enrichment claim).[5]

**IT IS ORDERED:**

1. Defendant John Carmichael's motion for summary judgment (Doc. 49) is **granted.**
2. Defendant Cathleen Coltrell's motion for summary judgment (Doc. 51) is **denied.**
3. The Court will set a final pretrial conference by separate order.

Dated this 30th day of April, 2015.

David G. Campbell
United States District Judge

---

[5] In Maguire's response regarding the unjust enrichment claim, he discusses the remedy of constructive trust. In so doing, he appears to suggest that he is seeking a constructive trust on one or both of the two homes. Doc. 57 at 9. The Court assumes that this is not Maguire's argument. Maguire has not otherwise argued for a constructive trust on the homes. Also, he has not included as a defendant the current owners of the homes.